1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

KING K. GARDNER,

            Plaintiff,

    v.

JO ANNE B. BARNHART, Commissioner of
Social Security,

            Defendant.

CASE NO.    C04-5545FDB

REPORT AND
RECOMMENDATION

Noted for November 4, 2005

Plaintiff, King K. Gardner, has brought this matter for judicial review of the denial of his application for disability insurance benefits.  This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976).  After reviewing the parties' briefs and the remaining record, the undersigned submits the following report and recommendation for the Honorable Franklin D. Burgess' review.

FACTUAL AND PROCEDURAL HISTORY

Plaintiff currently is fifty-three years old.[1] Tr. 71.  He has an eleventh grade education and past work experience as a precision grinder and truck driver. Tr. 16, 71, 157, 331.

---

[1]Plaintiff's date of birth has been redacted in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

Plaintiff filed an application for disability insurance benefits on January 11, 2002, alleging disability as of September 20, 2001, due to pain in his upper and lower back, wrists, knees, foot, ankle, and right leg. Tr. 14, 55, 80.  His application was denied initially and on reconsideration. Tr. 26-28, 37.  He requested a hearing, which was held on February 25, 2004, before an administrative law judge ("ALJ"). Tr. 327.  At the hearing, plaintiff, represented by counsel, appeared and testified, as did a vocational expert. Tr. 327-55.

On April 30, 2004, the ALJ issued a decision in which he determined plaintiff to be not disabled, finding in relevant part as follows:

> (1)   at step one of the disability evaluation process, plaintiff had not engaged in substantial gainful activity since his alleged onset date of disability;
>
> (2)   at step two, plaintiff had "severe" impairments consisting of moderate carpal tunnel syndrome and residual pain from a L4-5 discectomy and cervical C5-6 surgery;
>
> (3)   at step three, none of plaintiff's impairments met or equaled the criteria of any of those listed in 20 C.F.R. Part 404, Subpart P, Appendix 1;
>
> (4)   at step four, plaintiff had the residual functional capacity to perform a modified range of light work, which precluded him from performing his past relevant work; and
>
> (5)   at step five, plaintiff was capable of performing other jobs existing in significant numbers in the national economy.

Tr. 19, 23-25.  Plaintiff's request for review was denied by the Appeals Council on June 29, 2004, making the ALJ's decision the Commissioner's final decision. Tr. 6; 20 C.F.R. § 404.981.

On August 30, 2004, plaintiff filed a complaint in this court seeking review of the ALJ's decision. (Dkt. #1).  Specifically, plaintiff argues that decision should be reversed and remanded for an award of disability insurance benefits for the following reasons:

> (a)   the ALJ erred in evaluating the medical evidence in the record;
>
> (b)   the ALJ erred in assessing plaintiff's credibility;
>
> (c)   the ALJ erred in assessing plaintiff's residual functional capacity; and
>
> (d)   the ALJ erred in finding plaintiff capable of performing other jobs existing in significant numbers in the national economy.

For the reasons set forth below, however, the undersigned finds the ALJ properly determined plaintiff to be not disabled, and recommends the ALJ's decision be affirmed.

<u>DISCUSSION</u>

This court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standard and there is substantial evidence in the record as a whole to support the decision. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the court must uphold the Commissioner's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.     The ALJ Did Not Err in Evaluating the Medical Evidence in the Record or in Assessing Plaintiff's Residual Functional Capacity

To determine whether a claimant is entitled to disability benefits, the ALJ engages in a five-step sequential evaluation process. 20 C.F.R. § 404.1520. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. Id. Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. Id. However, a claimant's inability to work must result from his or her "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's residual functional capacity, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ assessed plaintiff with the following residual functional capacity:

I find the claimant retains the residual functional capacity to engage in light exertional work. However he is limited to lifting no more than ten pounds on a frequent basis and 20 pounds on an occasional basis. He also requires the ability to sit and/or stand as

necessary, and should not use ladders, ropes or scaffolding. He also should not use his hands repetitively for manipulation bilaterally. He also should only use ramps, stairs, balance, stoop, kneel, crawl or crouch occasionally. Mr. Gardner should also avoid concentrated exposure to noise or vibrations. He also should have a job where he is required only to follow simple 1-2-3 step instructions due to his pain medications.

Tr. 22-23. Plaintiff argues the ALJ erred in relying on the residual physical functional limitations provided by Dr. Robert G. Hoskins, a non-examining physician, who found him capable of performing a modified range of light work in late December 2002.[2] Tr. 255-60. Plaintiff further argues that in doing so, the ALJ failed to properly consider the late April 1997 opinion of Dr. D. B. Barnhouse, an examining physician,[3] whose findings, plaintiff asserts, preclude him from performing at the light exertional level. As explained below, however, this argument is without merit.

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, therefore, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Security Administration, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the court itself may draw "specific and legitimate inferences from the

---

[2]While nowhere in his decision or in the transcript of the hearing does the ALJ state he relied on the findings of Dr. Hoskins in assessing plaintiff's residual functional capacity, the physical limitations contained in the residual functional capacity with which the ALJ assessed plaintiff do closely match those found by Dr. Hoskins.

[3]There appears to be some question as to whether Dr. Barnhouse is a treating or examining physician. Plaintiff has referred to Dr. Barnhouse as both in his opening and reply briefs, and defendant has referred to him as a treating physician. The record, however, contains only one report from Dr. Barnhouse, a job analysis summary (Tr. 218-23), and there is no other indication in the record that Dr. Barnhouse had a treating relationship with plaintiff. Thus, it seems much more appropriate to view Dr. Barnhouse as an examining physician (i.e., one who examines but does not treat the claimant), than as a treating physician (i.e., one who is employed to cure the claimant). Lester, 81 F.3d at 830; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

1    ALJ's opinion." <u>Magallanes v. Bowen</u>, 881 F.2d 747, 755, (9th Cir. 1989).

2         The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of

3    either a treating or examining physician. <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a

4    treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and

5    legitimate reasons that are supported by substantial evidence in the record." <u>Id.</u> at 830-31.  However, the

6    ALJ "need not discuss *all* evidence presented" to him or her. <u>Vincent on Behalf of Vincent v. Heckler</u>, 739

7    F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in the original).  The ALJ must only explain

8    why "significant probative evidence has been rejected." <u>Id.</u>; <u>see also</u> <u>Cotter v. Harris</u>, 642 F.2d 700, 706-07

9    (3d Cir. 1981); <u>Garfield v. Schweiker</u>, 732 F.2d 605, 610 (7th Cir. 1984).

10        In general, more weight is given to a treating physician's opinion than to the opinions of those who

11   do not treat the claimant. <u>Lester</u>, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of

12   a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings."

13   <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002); <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1149 (9th

14   Cir. 2001); <u>Magallanes</u>, 881 F.2d at 75.  An examining physician's opinion is "entitled to greater weight

15   than the opinion of a nonexamining physician." <u>Lester</u>, 81 F.3d at 830-31.  A nonexamining physician's

16   opinion may constitute substantial evidence if "it is consistent with other independent evidence in the

17   record." <u>Id.</u> at 830-31; <u>Tonapetyan</u>, 242 F.3d at 1149.

18        Based on a job analysis summary completed in late April 1997, Dr. Barnhouse released plaintiff to

19   his regular work as a grinder operator, with certain permanent work restrictions, in early May 1997. Tr.

20   217-23.  Specifically, Dr. Barnhouse found plaintiff capable of lifting up to 35 pounds frequently and up to

21   75 pounds occasionally and carrying up to 35 pounds frequently and up to 60 pounds rarely. Tr. 220.   He

22   could stand, walk, bend, stoop, and rotate his neck to the side occasionally, reach and push/pull significant

23   amounts of weight, handle continuously, and grasp, perform fine finger manipulation, and flex his neck

24   frequently. Tr. 219, 221-22.  However, Dr. Barnhouse felt plaintiff should never climb/balance on stairs or

25   ladders and should only rarely twist at the waist, crouch, squat or kneel. Tr. 221.

26        Plaintiff argues the above limitations on neck rotation and flexion, twisting, crouching, squatting,

27   and kneeling, preclude him from being able to perform light work.  However, a review of the definition of

28   light work contained in the Commissioner's regulations reveals that this is not so.  Those regulations define

the term "light work" as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).[4]  Thus, even with the permanent limitations found by Dr. Barnhouse, it appears plaintiff still would retain the ability to do substantially all of these activities.  Indeed, it appears plaintiff would be capable of performing even at the medium exertional level.[5]

Plaintiff further faults the ALJ, however, for failing to even consider the limitations found by Dr. Barnhouse.  It is true that the ALJ did not discuss in his decision the physical functional limitations found by Dr. Barnhouse.  However, as noted above, Dr. Barnhouse's report, and the limitations contained therein, were provided in late April and early May 1997, nearly four and a half years prior to plaintiff's alleged onset date of disability.  See Vincent, 739 F.3d 1393 at 1394-95 (ALJ only required to explain why significant probative evidence has been rejected).  Plaintiff nevertheless argues those limitations should stand, as Dr. Barnhouse found them to be permanent, and no other examining physician in the record has identified any less restrictive or contradictory limitations.

Again, it is true that no other examining physicians in the record has provided a specific residual functional capacity assessment of plaintiff.  However, none of the diagnostic reports and clinical findings from those physicians that are contained in the record, all of which are dated close to or after plaintiff's alleged onset date of disability, indicate the presence of any work-related physical functional limitations more restrictive than those found by the ALJ. See Tr. at 118-19, 186-88, 193-95, 198-99, 201-03, 209-14,

---

[4]Plaintiff also cites to SSR 83-14 (which clarifies how the Commissioner's table rules contained in 20 C.F.R., Part 404, Subpart P, Appendix 2, provide a framework at step five of the disability evaluation process for decisions concerning claimants who have both exertional and nonexertional impairments) to argue that to perform substantially all of the exertional requirements of most light jobs, a person would need to be able to crouch and stoop occasionally. See 1983 WL 31254.  First, SSR 83-14 expressly states that such a person "would not need to crouch." Id. at *2 (emphasis added).  Second, even if SSR 83-14 can be said to apply to the ALJ's residual functional capacity determination, as discussed below, the weight of the medical evidence in the record supports the ALJ's finding that plaintiff is limited to light work, with the additional limitation of stooping only occasionally.

[5]The term "medium work" is defined as involving "no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. § 404.1567(c).

270, 276, 277-79, 282, 284, 287.  In addition, both non-examining medical sources in the record found plaintiff to be capable of performing light work, albeit with the additional limitations adopted by the ALJ in his residual functional capacity assessment. Tr. 175-82, 255-60.

Plaintiff's assertion that the evidence in the record indicates his medical condition has deteriorated, rather than improved, since early May 1997, also is without merit.  In late June 2000, for example, plaintiff reported he was not taking any pain medication, and had been "able to tolerate his pain situation reasonably well until the last couple of months." Tr. 213.  The examining physician at the time noted that plaintiff had "a history of very favorable response to epidural steroid injections in the past." Tr. 214.

Although it is true that a lumbar spine MRI performed in early November 2001, revealed a disc bulge and "mild degenerative changes" (Tr. 125), plaintiff reported doing "somewhat better" and "making improvement" since undergoing a lumbar laminectomy in late February 2002. Tr. 201, 203.  A lumbar spine x-ray taken in late June 2002, furthermore, turned out to be satisfactory. Tr. 196.  Also in late June 2002, plaintiff reported "not having much in the way of" buttock or leg pain, and again the examining physician noted he was "making some progress." Tr. 194.  In early August 2002, he reported "minimal to no leg pain" and "significantly improving" leg numbness. Id.

In late October 2002, plaintiff reported getting "significant relief for two weeks" following his first epidural injection. Tr. 186.  In late June 2003, he reported "rarely" having any discomfort into his leg. Tr. 270.  It also was noted at that time that he was "responding very well to acupuncture treatments," and that "his pain in [his] lower back and wrist" had "decreased tremendously." Tr. 271.  It further was noted that plaintiff had not been "using his pain relief patch as often" as he had previously, that his pain had not been as constant, intense or long lasting, and that his energy level had "improved a lot." Id.  Similar findings were reported the following month. Tr. 269.

Lastly, plaintiff argues the ALJ failed to take into account his ankle and wrist pain and depression in assessing his residual functional capacity.  As noted by the ALJ, however, the record reveals few, if any, objective medical findings indicative of significant difficulties with plaintiff's gait, balance, coordination, lower extremity strength, or ability to walk. Tr. 119, 187-88, 190, 193, 195, 199, 202-03, 210, 212, 214, 270.  Even so, the ALJ found plaintiff would require the ability to sit and stand as necessary. Tr. 22.  With respect to plaintiff's wrist pain, the ALJ noted plaintiff had moderate problems stemming from his carpal tunnel syndrome, and therefore found he should not use his hands repetitively for manipulation bilaterally.

Tr. 22, 264, 276, 279, 282, 284, 287.  Thus, the ALJ properly took into account any limitations from these impairments in his assessment of plaintiff's residual functional capacity.

With respect to plaintiff's alleged depression, the medical evidence in the record simply does not show that he had any greater mental functional limitations than were included by the ALJ in his assessment of plaintiff's residual functional capacity.  In early March 2002, plaintiff was found to have rambling and unfocused thought processes, poor insight and judgment, and a global assessment of functioning ("GAF") score of 60. Tr. 206.  However, the evaluator at the time noted his behavior was "consistent with an acute intoxication of opiates or benxodiazepine." Id.

Plaintiff's mental status examination in early April 2002, was largely intact, and he was diagnosed with a GAF score of 70. Tr. 158-60.  The evaluating psychiatrist noted that his main problem appeared to be "an adjustment disorder with depressed mood during periods of intense pain, associated with his back condition." Tr. 160.  No significant work-related limitations were noted. Id.  A non-examining psychologist also found plaintiff's mental impairments to be not severe. Tr. 161.  Even so, the ALJ limited plaintiff to following "simple 1-2-3 step instructions" due to his pain and pain medications. Tr. 23, 352.  The ALJ thus also did not err in excluding any further limitations due to plaintiff's mental impairments.

Accordingly, the substantial evidence in the record supports the limitations the ALJ included in his assessment of plaintiff's residual functional capacity.  As discussed above, most of the restrictions found by Dr. Barnhouse would enable plaintiff to perform substantially all of the activities required for light work, and likely even medium work.  Thus, to the extent the ALJ erred in not discussing Dr. Barnhouse's report, such error was harmless.  See Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1197 (9th Cir. 2004) (applying harmless error standard); Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (holding ALJ committed harmless error).  In addition, the record simply does not support plaintiff's assertion that the ALJ erred in failing to include in his residual functional capacity assessment any greater limitations due to his wrist pain, ankle pain or mental impairments.

II.      The ALJ Did Not Err in Discounting Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ.  Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982).  The court should not "second-guess" this credibility determination.  Allen, 749 F.2d at 580.  In addition, the court may not reverse a credibility determination where that determination is

based on contradictory or ambiguous evidence.  Id. at 579.  That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence.  Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief."  Lester, 81 F.3d at 834 (citation omitted).  The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."  Lester, 81 F.3d at 834; Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993).  Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing."  Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering.  O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid."  Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms.  Id.

Plaintiff first argues the ALJ's assessment of his credibility failed to comply with the analysis that is required by SSR 96-7p.  SSR 96-7p reads in relevant part as follows:

> The regulations describe a two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness or nervousness:

> *First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. . . .

> * Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

1   1996 WL 374186 at *2.

2        Plaintiff argues that once it has been shown, as it was here, that a claimant meets the first step of this

3   two-step process, the ALJ then is required "to *evaluate* the intensity, persistence, and limiting effects" of

4   the claimant's symptoms to determine the extent to which those symptoms limit his or her ability to do basic

5   work activities. Plaintiff's Opening Brief, p. 16 (emphasis in original).  Instead of taking this next step,

6   plaintiff asserts that the ALJ "erroneously followed the analysis required when symptoms *are not*

7   *substantiated by objective medical evidence*." Id. at p. 17 (emphasis in original).  Plaintiff argues it is that

8   process which "requires the ALJ to make a finding on the credibility of the individual's *statements* based on

9   a consideration of the entire case record." Id. (emphasis in original).

10       Plaintiff thus appears to be arguing that the ALJ was required to consider only the statements made

11  by plaintiff regarding his symptoms and impairments, as his impairments could reasonably be expected to

12  produce his pain and other symptoms.  Plaintiff, however, misinterprets the language of SSR 96-7p.  The

13  phrase "not substantiated by objective medical evidence" clearly refers to the claimant's "statements about

14  the intensity, persistence, or functionally limiting effects of pain or other symptoms," and not whether the

15  claimant in fact has medically determinable impairments.[6]  Therefore, SSR 96-7p requires the ALJ to base

16  his credibility determination on "a consideration of the entire case record" in evaluating the statements of

17  plaintiff regarding the nature and extent of his pain and other symptoms.

18       Plaintiff next argues the ALJ's credibility determination is not based on the substantial evidence in

19  the record.  The undersigned disagrees.  For example, the ALJ found the objective medical evidence in the

20  record was not consistent with plaintiff's medical complaints. Tr. 22; see Regennitter v. Commissioner of

21  SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with

22  clinical observations can satisfy clear and convincing requirement).  As discussed above, the ALJ properly

23  found plaintiff capable of performing a modified range of light work based on the medical evidence in the

24  record, which contradicts plaintiff's allegations of disabling pain.

25       The ALJ also discounted plaintiff's credibility in part for failing to pursue recommended treatment.

26

27       [6]Indeed, "[i]f there is no medically determinable physical or mental impairment(s), or if there is a medically determinable
28  physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other
    symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities." SSR 96-7p, 1996 WL
    374186 at *2.

REPORT AND RECOMMENDATION
Page - 10

Tr. 22.  Failure to assert a good reason for not seeking, or following a prescribed course of, treatment, or a finding that a proffered reason for failing to do so is not believable, "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989).  Again, the ALJ's finding is supported by substantial evidence in the record.  In late June 2000, plaintiff was noted to not be taking any pain medications. Tr. 213.  In late April 2002, it was reported that plaintiff had "not had any therapy since his surgery" in late February 2002. Tr. 203.

While he had returned to physical therapy by late June 2002, he decided on his own "to stop all of his medication for his back." Tr. 194.  Although plaintiff was offered physical therapy again in late October 2002, he declined to have any more done. Tr. 187.  In late June 2003, plaintiff again declined to pursue a surgical procedure that had been recommended for his injured right ankle and foot. Tr. 270.  He also was "reluctant" to get surgery for his carpal tunnel syndrome. Tr. 276.

The ALJ further noted certain inconsistencies in plaintiff's statements regarding his pain symptoms and other limitations. Tr. 22; See Smolen, 80 F.3d at 1284 (ALJ may consider claimant's prior inconsistent statements concerning symptoms as evidence of lack of credibility).  Thus, for example, the ALJ noted that while plaintiff claimed to use a pain patch that required him to sleep, he also reported becoming anxious, making him generally unable to function. Tr. 22.  In addition, although plaintiff has alleged disabling pain symptoms, as noted by the ALJ and as discussed above, Vicodin and other pain medications were working for him without any side effects. Id.  Indeed, on at least one occasion, plaintiff reported not having had to taken any pain medication. Tr. 213.

To determine whether a claimant's symptom testimony is credible, the ALJ may consider his or her daily activities. Smolen, 80 F.3d at 1284.  Such testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Id. at 1284 n.7.  The claimant need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id.

Here, the ALJ found plaintiff was able to "prepare simple meals," do "some household chores," go grocery shopping and prepare dinner with his wife, and go outside to feed the birds and squirrels. Tr. 22.  The undersigned agrees with plaintiff that such limited activities do not clearly and convincingly establish he is capable of spending a substantial part of his day performing household chores or other activities that are

1  transferable to a work setting.  Nevertheless, the mere fact that one of the ALJ's reasons for discounting

2  plaintiff's credibility is not legitimate, does not render the credibility determination invalid, as long as it is

3  supported by substantial evidence, as it is here. Tonapetyan, 242 F.3d at 1148.

4  III.    The ALJ Properly Found Plaintiff Not Disabled at Step Five of the Disability Evaluation Process

5        If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation

6  process the ALJ must show there are a significant number of jobs in the national economy the claimant is

7  able to do. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d)-(e).  The

8  ALJ can do this through the testimony of a vocational expert or by reference to the Commissioner's

9  Medical-Vocational Guidelines (the "Grids"). Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240

10 F.3d 1157, 1162 (9th Cir. 2000).

11       An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical

12 posed by the ALJ. Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d

13 1450, 1456 (9th Cir. 1984).  The vocational expert's testimony therefore must be reliable in light of the

14 medical evidence to qualify as substantial evidence. Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

15 Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by

16 the medical record." Embrey, 849 F.2d at 422 (citations omitted).  The ALJ, however, may omit from that

17 description those limitations he finds do not exist. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001)

18 (because ALJ included all limitations that he found to exist, and those findings were supported by

19 substantial evidence, ALJ did not err in omitting other limitations claimant failed to prove).

20       The ALJ posed the following hypothetical question to the vocational expert:

21          [Y]ou are dealing with an individual who is the same age as our Claimant, who has the
            same educational background and past work experience.  Assume for this hypothetical
22          that this person would be capable of lifting and carrying 20 pounds occasionally, ten
            pounds frequently, could stand six of eight hours or sit six of eight hours.  Should not be
23          required to use ladders, ropes, or scaffolds and only occasionally ramps, stairs,
            balancing, stooping, kneeling, crouching, and crawling.  Would need to avoid
24          concentrated exposure to both noise and vibration.  And would be capable of simple,
            one, two, three-step work because of distractions of pain and sometimes medication.
25
26 Tr. 351-52.  In response, the vocational expert testified that plaintiff was capable of performing other jobs

27 existing in significant numbers in the national economy. Tr. 352.  Based on the testimony of the vocational

28 expert, the ALJ found plaintiff not disabled. Tr. 23-24.  Plaintiff does not challenge the ALJ's reliance on

the vocational expert's testimony.  Even if he had, however, the above hypothetical question incorporates

1  substantially the same limitations as are in the ALJ's residual functional capacity assessment, which, as

2  discussed above, accurately describe plaintiff's residual functional capacity.

3          Plaintiff does argue he should be found disabled under 20 C.F.R. Part 404, Subpart P, Appendix 2, §

4  201.10, based on the report of Dr. Barnhouse.  Given his vocational profile, plaintiff asserts Rule 201.10

5  would direct a finding of "disabled," because Dr. Barnhouse's report shows that at most he is capable of

6  performing sedentary work.  As discussed above, however, the ALJ did not err (or, if he did, such error was

7  harmless) in failing to discuss that report in his decision, as the substantial evidence in the record supports

8  the ALJ's finding that plaintiff is capable of performing a modified range of light work, and therefore the

9  jobs identified by the vocational expert.

10                                    CONCLUSION

11         Based on the foregoing discussion, the court should find the ALJ properly concluded plaintiff was

12  not disabled, and should affirm the ALJ's decision.

13         Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b),

14  the parties shall have ten (10) days from service of this Report and Recommendation to file written

15  objections thereto.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

16  objections for purposes of appeal.  Thomas v. Arn, 474 U.S. 140 (1985).  Accommodating the time limit

17  imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **November 4,**

18  **2005**, as noted in the caption.

19         DATED this 3rd day of October, 2005.

20

21

22

23                                      Karen L. Strombom
                                        United States Magistrate Judge
24

25

26

27

28